Avery Samet
Jeffrey Chubak
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
*Attorneys for Salvatore LaMonica, as*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ROCKYOU, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-10453 (SCC) |

## SUMMARY SHEET

### FINAL APPLICATION OF AMINI LLC, SPECIAL LITIGATION COUNSEL TO THE TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

| Applicant | Amini LLC |
|---|---|
| Counsel for | Salvatore LaMonica, as Chapter 7 Trustee |
| Compensation Period | October 5, 2020-July 16, 2021 |
| Compensation Requested | $168,960.19, consisting of: (1) $50,000 in hourly, capped fees for investigation; (2) $38,960.19 in contingency fees from recovered cash settlement payments, calculated after deducting expenses and hourly fees; and (3) $80,000 in contingency fees from waiver of $3.6 million of secured claims.[1] |
| Expenses Requested | $3,119.43 |

---

[1] At the request of the Office of the United States Trustee, Applicant has agreed to receive payment of $135,168.15, which represents 80% of the compensation request and 100% of the expenses request of $3,119.43 with the 20% holdback of $33,792.04 (the "Holdback") be paid to Applicant by the Trustee upon the conclusion of the case.

| Interim/Final | Final |
|---|---|

## SUMMARY OF TIME DETAIL

| Name | Year Admitted | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Bijan Amini | 1985 | 33.6 | $800 | $24,192 |
| Avery Samet | 2004 | 103.1 | $600 | $55,674 |
| Jeffrey Chubak | 2008 | 272.4 | $500 | $122,580 |
| Casey Hail | 2009 | 4.9 | $425 | $1,874.25 |
| Ryan Bathras | Paralegal (N/A) | .9 | $150 | $121.50 |
| Leah Khalil | Paralegal (N/A) | 121.1 | $130 | $14,168.70 |
| Abla Laallam | Paralegal (N/A) | 2 | $130 | $234 |

Total: $218,844.45

Blended Hourly Rate for Attorneys: $493.53

## ITEMIZATION OF EXPENSES

| Expense | Amount |
|---|---|
| Court fees | $350 |
| Mailing costs | $2,200.16 |
| Research charges (incl. Pacer) | $495.76 |
| Teleconference services | $73.51 |

Total: $3,119.43

## COMPENSATION AND EXPENSES PREVIOUSLY REQUESTED OR ALLOWED

N/A.

Avery Samet
Jeffrey Chubak
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
*Attorneys for Salvatore LaMonica, as*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ROCKYOU, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-10453 (SCC) |

**FINAL APPLICATION OF AMINI LLC, SPECIAL**
**LITIGATION COUNSEL TO THE TRUSTEE, FOR ALLOWANCE OF**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Amini LLC ("Amini"), special litigation counsel to Salvatore LaMonica, solely in his capacity as Chapter 7 Trustee ("Trustee") of the estate of RockYou Inc. ("Debtor"), submits this first and final application for allowance of compensation ("Application") for services rendered from October 5, 2020 through July 16, 2021 in the amount of $168,960.19 (the "Fee Request"),[1] and reimbursement of actual, necessary expenses incurred during said period in the amount of $3,119.43 (the "Expense Request"), pursuant to Bankruptcy Code sections 328 and 330.

---

[1] At the request of the Office of the United States Trustee, Applicant has agreed to receive payment of $135,168.15, which represents 80% of the compensation request and 100% of the expenses request of $3,119.43 with the 20% holdback of $33,792.04 (the "Holdback") be paid to Applicant by the Trustee upon the conclusion of the case.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case and this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of this case and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and other predicates for relief sought herein are Bankruptcy Code sections 330 and 331, Rule 2016 and Local Rules 2016-1 and 2016-2.

## PROCEDURAL BACKGROUND

4. On February 13, 2019, Debtor and its affiliate MMJK, Inc. (together, "Debtors"), filed voluntary petitions for relief pursuant to Chapter 7 of the Bankruptcy Code.

5. The Trustee was appointed as the interim Chapter 7 Trustee of the Debtors' estates, and has since duly qualified as the permanent trustee administering the estates.

6. On December 22, 2020, the Court entered an Order approving the retention of Amini as the Trustee's special litigation counsel *nunc pro tunc* to October 5, 2020 (the "Retention Order"). (ECF Doc #116.) A copy of the Retention Order is annexed as Exhibit A.

7. This is Amini's first and final Application for the allowance of fees and expenses in connection with its representation of the Trustee herein. All services for which compensation is sought herein were rendered for and on behalf of the Trustee and not on behalf of any other person or entity.

8. The Trustee was given a copy of this Application and has approved the Fee and Expense Requests being made hereby.

## SUMMARY OF SERVICES RENDERED

9. The Debtor was an interactive media company that delivered free-to-play games and content to consumers on mobile devices, social media (e.g. Facebook) and the web, with a view principally to generating advertising revenue.

10. Its non-games, media business segment was comprised of parenting and lifestyle brands, and their respective websites; specifically, LittleThings, CafeMom, The Revelist, Mamas Latinas, Baby Name Wizard, 50-plus website Purple Clover and Mom.me.

11. The Debtor and its subsidiaries incurred over $20 million in debt under a Credit Agreement with Centre Lane Partners Master Credit Fund II, L.P. ("Centre Lane"), dated December 21, 2017.

12. Centre Lane declared a default in September 2018, and conditioned forbearance on the Debtor's engaging a CRO and selling its gaming and media businesses.

13. The gaming business was sold on December 23, 2018, and a Centre Lane affiliate, CL Media Holdings LLC dba Wild Sky Media, foreclosed on the media business with the consent of the Debtor, pursuant to N.Y. U.C.C. § 9-620, as of January 31, 2019.

14. Following the commencement of this case on February 13, 2019, Centre Lane filed a proof of claim against each of the Debtors in the amount of $3.6 million, the asserted balance of outstanding obligations under the Credit Agreement less the estimated fair market value of the media assets per a third party (Hilco) valuation, the then anticipated value of deferred payments due under the games sale asset purchase agreement and other adjustments.

15. The foreclosure transferee (Wild Sky Media) also filed an unliquidated proof of claim against each of the Debtors.

16. Following the consummation of the foreclosure, the Debtor's CRO became the CEO of Wild Sky Media and he projected EBITDA of $3.2 million for Wild Sky Media for the remaining 11 months of 2019.

17. From and after October 5, 2020 (Amini retention date), Amini undertook a robust investigation that included review of inter alia loan, security, foreclosure, sale and valuation documents, board presentations, financial records and emails of the Debtor's officers and other personnel from the months leading up to the foreclosure; and prepared a complaint based on the results of its investigation and at the direction of the Trustee.

18. Ultimately, the Trustee compromised its claims and causes of action against Centre Lane and Wild Sky Media on terms provided in a settlement agreement, dated April 8, 2021 by among the Trustee, Centre Lane and Wild Sky Media (the "Settlement Agreement"). (ECF Doc. #141-2.) Pursuant to the Settlement Agreement, Centre Lane paid $125,000 to the Trustee, and Centre Lane and Wild Sky Media waived their proofs of claim against each of the Debtors in exchange for releases from their respective estates. (Id.) Specifically, Centre Lane waived its senior secured claim of $3.5 million against the Debtors' respective estates and Wild Sky waived its claims to various accounts in the Debtors' name. (Id.) On June 1, 2021, the Court entered an Order approving the Settlement Agreement. (ECF Doc. #149).

19. In addition, Amini commenced a preference action against Debtor's counsel, McGuireWoods LLP ("McGuireWoods"), and resolved the same in exchange for a $45,000 settlement payment, which the Court approved in an Order entered July 16, 2021. (ECF Doc. #162.)

20. In connection with the settlements, Amini's work included, but was not limited to:
(a) virtual meetings with the Trustee and his attorneys, and numerous email and telephone communications with them;

(b) gathering and reviewing the Debtor's ESI including emails and financial information, procured by the Trustee pursuant to Rule 2004;

(c) Preparing, researching and drafting complaints; and filing the same in the case of McGuireWoods;

(d) Conducting extensive negotiations with counsel for Centre Lane, Wild Sky Media and McGuireWoods;

(e) Preparing and negotiating tolling and settlement agreements with Centre Lane, Wild Sky Media and McGuireWoods;

(f) Working with the Trustee's financial advisors to review the Debtors' financial information and identify potentially avoidable transfers; and

(g) Consulting with and reporting regularly to the Trustee on the status of the investigation, negotiations and strategic considerations.

## RELIEF REQUESTED

21. The Retention Order provides for the firm to be compensated as follows: As to its investigation, "Amini shall be paid … on an hourly basis as discounted by 10%; provided, however, that Amini will cap its hourly fees at $50,000 and will initially cap its reimbursement of expenses at $5,000." (Retention Order p.2.) As to the pursuit of causes of action, "Amini shall be paid on a contingent fee basis as follows: 33-1/3% of any recovery realized by the Trustee with respect to any claim or cause of action which Amini pursues, whether through settlement, suit or otherwise which the Trustee directs Amini to pursue on behalf of the Debtor's estate (calculated after (i) deducting any expense reimbursements owed to Amini and (ii) deducting any hourly fees already paid or to be paid to Amini for services relating to the investigation)."[2] (Id. p.3.)

22. The Retention Order further provides: "to the extent that any work of Amini that was directed by the Trustee to pursue results in a reduction of claims asserted against the Debtor's estate, compensation for such reduction shall be paid … in an amount and manner to be negotiated

---

[2] No fees have been paid to Amini or previously allowed in relation to its investigation.

in good faith between Amini and the Trustee, but in no event to exceed 33-1/3% of such claim reduction." (Id.)

23. Amini calculates its fees as follows:

 (a) <u>Hourly fees on a discounted basis, capped at $50,000</u>. Amini's hourly time on a discounted basis exceeded $50,000 as shows by the time detail annexed hereto as <u>Exhibit B</u>.

 (b) <u>33-1/% of any recovery calculated after expense reimbursements and hourly fees</u>. Amini recovered $170,000. After deducting expenses ($3,119.43) and hourly fees ($50,000) sought herein, that equals $116,880.57. Therefore, Amini is owed a contingency fee of $38,960.19.[3]

 (c) <u>Negotiation with Trustee for claim reductions</u>. Following negotiation, the Trustee has agreed, subject to Court approval, to compensate Amini $80,000 on account of the above-described secured claim waivers and waivers of other rights obtained pursuant to the Centre Lane and Wild Sky settlement agreement. Those settlement waivers represented the principal driver of the settlement and will benefit the Debtors' estates far more than the $80,000 payment. The Trustee believes that the compensation to Amini is not more 1/3 of the ultimate benefit which the estates expect to receive from the claim waivers.

24. In light of the foregoing, as well as the fact that Amini exceeded the above-referenced $50,000 cap in conducting its investigation, as described in the annexed monthly fee statements, Amini respectfully requests allowance of compensation in the amount of $168,960.19 and reimbursement of expenses in the amount of $3,119.43.

## THE APPLICATION SHOULD BE GRANTED

25. Amini respectfully submits that, in light of the applicable statutory provisions and case law, an examination of the specific services rendered to the Trustee in the Debtor case demonstrates that this Application should be granted.

---

[3] The formula can also be expressed as: $170,000-$3,119.43-$50,000 = $116,880.57. $116,880.57 divided by 3 equals $38,960.19.

## I. THE FEE REQUEST SHOULD BE GRANTED

26. Pursuant to Bankruptcy Code section 330(a)(1), after notice and a hearing the Bankruptcy Court may award a professional person employed under Bankruptcy Code section 327 "(A) reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such [attorney]; and (B) reimbursement for actual, necessary expenses." Section 330(a)(3) further provides that:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>
> (A) the time spent on such services;
>
> (B) the rates charges for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

### A. Properly Compensable Legal Services

27. The services rendered by Amini were legal services and are properly compensable as such. In making this determination, "the threshold question should be whether the services performed were those which one not licensed to practice law could properly perform for another for compensation." In re Shades of Beauty, 56 B.R. 946, 949 (E.D.N.Y. 1986) (citing In re Meade Land & Development Co., Inc., 527 F.2d 280, 284-85 (3d Cir. 1975)).

28. In this case, Amini performed legal services relating to discrete legal tasks. The services for which Amini seeks compensation "are not those generally performed by a trustee without the assistance of an attorney." In re Minton Group, Inc., 33 B.R. 38, 40 (Bankr. S.D.N.Y. 1983).

### B. Necessary and Actual Services

29. The legal services performed by Amini were also "actual" and "necessary" within the meaning of section 330(a)(1) (quoted above). See In re Wildman, 72 B.R. at 707-08 ("The primary objective of any fee petition is to reveal sufficient data to enable the Court to determine whether the services rendered were . . . actual and necessary."). As the detailed time records indicate, Amini "actually" performed the legal services for which it is now seeking compensation. See Wildman, 72 B.R. at 707; Shades of Beauty, 56 B.R. at 950.

30. It is incumbent on the attorney seeking compensation to prove the necessity of his or her services by showing that such services were reasonably likely to benefit the estate. See In re Acme Cake Co., 495 B.R. 212, 218 (Bankr. E.D.N.Y. 2010) ("Services are necessary if they were reasonably likely to benefit the estate . . . [a]n objective test is used, and examines whether a reasonable attorney would have performed those services under the same circumstances" (quotation and citation omitted). In accordance with section 330(a)(3)(C), "[w]hether services are necessary is determined from the perspective of the time at which the services were rendered." In re Kohl, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009) (citations omitted); In re Value City Holdings, Inc., 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) (citing Kohl, 421 B.R. at 125) ("In evaluating the award of professional fees, courts objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered").

31. All of the services performed by Amini were necessary and beneficial to the Debtors' estates. Amini performed services necessary for the Trustee to administer the estates and to perform his statutory duties.

32. Based on the above, Amini respectfully submits it has adequately explained "how" and "why" its legal services on behalf of the Trustee were rendered, Shades of Beauty, 56 B.R. at 950, and that such services were actual and necessary.

### C. Value of Services/Extent of Compensation

33. In determining the value of legal services and the extent of compensation, this Court should consider: whether the tasks were performed within a reasonable number of hours; whether the requested hourly rate was reasonable; and, the cost of comparable services performed in non-bankruptcy cases. See 11 U.S.C. § 330(a)(3)(A)-(F). Legal services for which a firm seeks compensation should be judged by a "standard of economy" which rewards attorneys for "efficiency". Shades of Beauty, 56 B.R. at 951.

34. "To assess the reasonableness of the time expended by an attorney, the court must look first to the time and work as they are documented by the attorney's records. Next the court looks to its own familiarity with the case and its experience generally." Kohl, 421 B.R. at 129 (quotation and citation omitted); see In re Wiedau's, Inc., 78 B.R. at 909 (citing a variety of factors in applied in determining "reasonableness of the number of hours and the hourly rate", including: the time and labor required; the skill necessary to properly perform the services; the preclusion of other employment by the attorney due to the case; time limitations imposed by circumstances; and the experience, reputation and ability of the attorney (citations omitted)); see also Shades of Beauty, Inc., 56 B.R. at 951.

35. Although Amini's compensation is only based in part on hours incurred, Amini nevertheless maintains written records of time spent by attorneys and paraprofessionals performing

legal services on behalf of the Trustee. Such time records are generally made contemporaneously with the rendering of services by the person rendering such services and in the ordinary course of the Amini's practice. The records reflect the name of the attorney or paraprofessional, the date on which the services were performed, the services rendered and the amount of time spent performing the services.

36. Included in Amini's time records is a list of the attorneys and paraprofessionals who worked on these cases, the aggregate time spent, current hourly billing rates and the value of the total time expended.

## II. THE EXPENSE REQUEST SHOULD BE GRANTED

37. It is respectfully submitted that this Court also allow Amini's request for reimbursement of its Expense Request as set forth on Exhibit B. See 11 U.S.C. § 330(a)(1)(B) (permitting "reimbursement for actual, necessary expenses" for professionals retained under section 327). In determining whether expenses are "actual" and "necessary", the following standard applies:

> Expenses are deemed "actual" when incurred if they are in fact incurred rather than based on guesswork, formula or pro rata allocation, and when they are obviously attributable to a bankruptcy client. . . . Expenses are "necessary" when incurred if they were properly required to accomplish the task for which the professional was employed.

In re Borders Grp., Inc., 456 B.R. 195, 203 (Bankr. S.D.N.Y. 2011) (quotations and citations omitted).

38. As reflected in Exhibit B, each expense for which Amini seeks reimbursement (identified in the prefixed summary sheet, principally mailing charges incurred pursuant to Rule 2002(a)(3) and totaling $3,119) was actually incurred by it in the course of its representation of the Trustee herein.

39. Each such expense was necessary in order for Amini to fulfill its obligations as counsel to the Trustee. Expenses of the type for which reimbursement is sought are customarily charged to Amini's non-bankruptcy clients and are both reasonable and economical.

40. All expenses incurred to third parties are limited to the actual amounts paid by or billed to Amini. Further, the expenses incurred by Amini reflect the actual costs of the same. None of the expenses for which Amini seeks reimbursement are in the nature of non-reimbursable overhead.

## NO PRIOR REQUEST OR AGREEMENT

41. No prior application for the relief requested in this Application has been made to this Court or to any other court.

42. No agreement or understanding exists between Amini and any other person for the sharing of compensation to be received for professional services rendered in these cases.

## CONCLUSION

WHEREFORE, Amini respectfully requests entry of an Order granting the Fee Request in the amount of $168,960.19, the Expense Request in the amount of $3,119.43 and such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 2, 2021

AMINI LLC

s/ Avery Samet
Avery Samet
Jeffrey Chubak
131 West 35th Street, 12th Floor
New York, New York 10001
Tel: (212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
*Attorneys for Salvatore LaMonica, as Chapter 7 Trustee*